UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE LAVON CLARK,

                      Petitioner,          Case No. 2:16-cv-13813
                                                        Hon. Victoria A. Roberts
v.

SHAWN BREWER,
                      Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) GRANTING CERTIFICATE OF APPEALABILITY WITH RESPECT TO PETITIONER'S SECOND CLAIM, AND (3) DENYING CERTIFICATE OF APPEALABILITY WITH RESPECT TO PETITIONER'S OTHER CLAIMS**

This is a habeas case filed by a Michigan prisoner under 28 U.S.C. § 2254. A jury convicted Dwayne Lavon Clark in two consolidated cases in the Wayne Circuit Court of three counts of armed robbery, MICH. COMP. LAWS § 750.529, two counts of carjacking, MICH. COMP. LAWS § 750.529a, two counts of carrying a concealed weapon, MICH. COMP. LAWS § 750.227, felon-in-possession of a firearm, MICH. COMP. LAWS § 750.224f, and possession of a firearm during the commission of felony (felony-firearm), MICH. COMP. LAWS § 750.227b. The Court sentenced Petitioner as a fourth-time habitual felony offender to sentences, including 35-to-60 year terms for the armed robbery and carjacking convictions, and a mandatory 2-year consecutive term for the felony-firearm conviction.

Clark raises five claims: (1) the trial court erroneously consolidated Petitioner's two cases for trial, (2) Petitioner was denied his right to present a defense when the trial court ruled that Petitioner could not present an alibi witness as a result of his failure to file a timely notice of alibi, (3) Petitioner was denied his right to a fair and impartial jury where a member of the jury was employed as a prison administrator who was involved in previous disciplinary actions against Clark,

(4) Petitioner was denied his right to a public trial where the courtroom was closed after jury selection, and (5) insufficient evidence was presented at trial to prove beyond a reasonable doubt that Petitioner was guilty of one of the offenses under an aiding and abetting theory.

The Court finds that the state court adjudication of Petitioner's claims complied with the requirements of clearly established Supreme Court law. Therefore, the petition will be denied. The Court will, however, grant a certificate of appealability with respect to Petitioner's second claim and deny a certificate of appealability with respect to others.

## I. Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> These cases arise from two carjacking incidents occurring in Detroit, Michigan on September 30, 2012. Defendant was tried for offenses relating to both incidents in a single trial before a single jury.
>
> A. DOCKET NO. 316547
>
> On September 30, 2012, at approximately 2:45 a.m., Megan Farris, Nicole McDougal, and Lakesha Payton were in Farris's automobile near in [sic] Detroit. Farris testified that she recalled that McDougal was driving, Farris was in the front passenger's seat, and Payton was in the back seat. They pulled into a driveway of a house where they were dropping off McDougal. McDougal got out of the car and walked toward the passenger's side, while Farris got out of the car and walked toward the driver's side. Payton was getting out of the back seat and getting into the front passenger's seat. Farris had shut the driver's door when a man, whom she later identified as co-defendant Tracy Wells, came to the door, opened it, pointed a gun toward Farris's head, and told her to get out of the car and leave her things. There was also a man on the other side of the vehicle, but Farris did not see him. Farris heard McDougal say that the other man also had a gun, but Farris did not see it. Farris got out of the vehicle, dropped her phone on the ground, and left her purse in the vehicle. Farris saw the man on the other side of the vehicle patting down Payton. Wells then got into the vehicle and started backing up, almost striking Payton; the other man pulled Payton out of the way of the vehicle. The vehicle drove off. Farris later identified Wells in a live lineup.

McDougal testified that she recalled Farris being in the back seat and Payton being in the front passenger's seat when they pulled into the driveway. McDougal got out of the car and began to walk behind the vehicle. She heard someone say "drop everything you got and get out the car." She turned around, at which point someone else approached her and said, "turn around and drop everything." The person had a black gun pointed at her. McDougal dropped her cell phone, keys, and wallet. The man picked up her cell phone and wallet, but not the keys. McDougal saw the vehicle backing up quickly and heard the man that was near her say, "don't hit her." McDougal then yelled, "please don't hit her with the truck," referring to Payton. The man pulled Payton out of the way and then jumped into the vehicle. McDougal did not see either man's face.

Payton testified that she recalled being in the back seat of the vehicle and that Farris was in the front seat. She testified that Wells opened Farris's door and pointed a gun at her, and that she saw another man behind McDougal. As Payton was walking toward the back of the vehicle, the man on her side of the vehicle told her to stop and patted her down. Payton identified that man as defendant. Payton saw that defendant had a black gun, which she believed was an automatic, when Wells was backing up the vehicle and defendant pulled her back. Payton testified that she saw defendant's face when he got into the vehicle. Payton later identified defendant in a photographic lineup. Payton admitted that at a live lineup she stated that Wells was the person who was behind McDougal and who patted down Payton. Payton testified that she told a detective that she wanted to correct that statement. Officer Mark Burke, assigned to the Commercial Auto Theft Section (CATS) of the Detroit Police Department, also testified that Payton identified Wells at a live lineup, but testified that she never indicated she wanted to change her statement.

## B. DOCKET NO. 316546

On September 30, 2012, at approximately 11:50 p.m., Christina Ringo and Mohamed Qatanani drove to a party store in Detroit. They were in a gray Malibu that Ringo was renting because she had been in an automobile accident. Qatanani was driving and parked directly in front of the store. He then got out of the vehicle and went into the store. Another gray Malibu pulled up and parked on the left side of Ringo's vehicle. Ringo's car was facing the store, while the other Malibu was facing the street. Ringo testified that there were "a bunch of guys" in the other Malibu. The driver of the other Malibu got out of the vehicle, took a few puffs of a cigarette, and threw the cigarette down. Ringo testified that the man in the passenger's seat, whom Ringo identified as defendant, then moved over to the driver's seat of that vehicle. The driver looked as if he was going into the store, but then entered the driver's side of Ringo's vehicle. He turned to Ringo, put a black gun to Ringo's stomach, and said, "get the f*** out the car, and give me your purse." Ringo grabbed her purse and tried to get out of the car, but the man grabbed her and put the gun to her face. He said, "I'm gonna tell you one more time, get the f*** out of the car, and leave your mother f***in' purse." The man snatched Ringo's purse and pushed her out of the

3

car. The man then drove away and the other Malibu followed. At a live lineup, Ringo later identified the man who took her purse and got into her vehicle as Wells. Ringo identified defendant in a photographic lineup as the person who drove off in the other Malibu.

Qatanani returned to the party store the day after the incident and one of the owners, Rob, showed him a security camera video on his computer. According to Qatanani, the video showed a gray Malibu parked next to Ringo's car and also showed the driver get out and enter Ringo's car. The video showed the man in the passenger's seat move over into the driver's seat. Qatanani obtained a copy of the video on flash drive, but was unable to get the video to play. Qatanani went back to the store and the owner played the video again. Qatanani was unable to locate the flash drive at the time of trial. Officer Lewis Jackson, Jr., also assigned to CATS, testified that he visited the party store two weeks after the incident and he was told by a manager of the store that the video was no longer available because it was taped over after a certain number of days.

Robert Sokana, one of the operators of the party store, testified that he viewed the security video the day of the incident and gave Qatanani a copy of the video the next day. Sokana testified that the video showed "more than two," possibly "three or four" men who had arrived in the other Malibu go in and out of the store a few times before the carjacking. At one point, they drove across the street, then returned and did a U-turn in the parking lot before parking next to Ringo's vehicle. According to Sokana, the vehicle that the men arrived in left first and Ringo's vehicle followed.

### C. FACTS IN COMMON TO BOTH DOCKETS

Keyona Harris testified that defendant was the father of her child. The police came to her house at 14828 Northlawn on October 5, 2012 with a search warrant. Defendant did not live there, but she told police that defendant had been staying with her. Harris did not own a gun, but a gun was found in her home that day. Harris testified that defendant would come to her house with a man named either Rah-Rah or Ron Ron, and Wells. Sergeant Robert Wellman of CATS executed the search warrant at that address. Wellman believed the home to be defendant's residence. The officers discovered a black .357 revolver in the closet of the home. The gun was not submitted for fingerprint analysis. Defendant did not testify at trial. The parties stipulated that defendant had been previously convicted of a felony and was ineligible to own a firearm.

*People v. Clark*, No. 316546; 316547, 2015 WL 248659, at *1-3 (Mich. Ct. App. Jan. 20, 2015).

Petitioner filed a direct appeal from both convictions. His appellate counsel filed two appellate briefs, one raising what now form all five of his habeas claims, and the other raising the

4

same claims but omitting the sufficiency of the evidence claim. The Michigan Court of Appeals consolidated the appeals and affirmed Petitioner's convictions in an unpublished opinion. *Id*. Petitioner filed two applications for leave to appeal in the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court denied the application because it was not persuaded that the question presented should be reviewed. *People v. Nichols*, 858 N.W.2d 456 (Mich. 2015).

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), quoting *Williams*, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the

5

state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103 (internal quotation omitted).

### III. Analysis

A. Joinder of Cases for Trial

Petitioner's first claim asserts that the trial court erroneously consolidated his two cases for trial. He claims that the consolidation unfairly allowed the jury to hear the testimony of unrelated victims describing offenses occurring under different circumstances. Petitioner asserts that the prosecution did not present any evidence that the two crimes were part of a series of connected acts, and the improper consolidation allowed the prosecutor to show "guilt by pattern of behavior." Dkt. 1, Brief at 17.

After discussing state law rules governing joinder of cases, the Michigan Court of Appeals found that the trial court did not abuse its discretion in joining the two cases for trial:

> Here, the trial court ruled that defendant's cases could be tried together because, although they involved "two separate incidents," they were "close enough in time involving the same circumstance." The trial court also ruled that there would not be separate juries and stated that the cases were "part of like a similar sequence of events." The trial court subsequently reaffirmed its ruling, stating "we have the same people doing something similar."
>
> The trial court did not violate Michigan Court Rule 6.120 by consolidating defendant's cases because the offenses were "related." Mich. Ct. R. 6.120(B)(1). The record evidence supports the conclusion that defendant was involved in a scheme to perpetrate carjackings and armed robberies on female victims at night. Similar to the offenses in *Williams*, 483 Mich. at 234-235, the offenses in this case were related not merely because they involved similar conduct, but because they were "a series of acts constituting parts of a single scheme or plan." Rule 6.120(B)(1)(c). The scheme or plan was evidenced by the same co-perpetrator in each case, similar victims,

6

similar circumstances, and the fact that the acts occurred on the same day.

*Clark*, 2015 WL 248659, at *4.

The claim is not cognizable on federal habeas review because improper joinder does not, by itself, violate clearly established Supreme Court law. In *United States v. Lane*, the Supreme Court suggested that misjoinder could rise "to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." 474 U.S. 438, 446, n. 8 (1986). Nevertheless, the Sixth Circuit noted that this language in *Lane* concerning a trial court's failure to sever criminal charges is dicta and did not constitute clearly established federal law. See *Mayfield v. Morrow*, 528 F. App'x. 538, 541-42 (6th Cir. 2013). Because "'clearly established Federal law' for purposes of § 2254(d)(1) refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions[.],'" *Id.* (quoting *Williams*, 529 U.S. at 412), the Sixth Circuit concluded that a federal habeas petitioner could not rely on *Lane* to obtain habeas relief on his claim that he had been deprived of his right to a fair trial when the judge denied his motion to sever different rape charges. *Id.* Simply stated, there are no "Supreme Court cases holding that a defendant in a criminal case has a constitutional right to a separate trial on each of the charges against him." *Rodriguez v. Jones*, 625 F. Supp. 2d 552, 560-61 (E.D. Mich. 2009). Petitioner's citation to lower federal court cases concerning the erroneous admission of other bad acts evidence do not apply to this case where all the evidence pertained to one or both of the charged offenses.

Because Petitioner's claim cannot be supported by clearly established Supreme Court law, the Michigan Court of Appeals' rejection of Petitioner's improper joinder claim is insulated from federal habeas review under § 2254(d). See *Wright v. Van Patten*, 552 U.S. 120, 126 (2008); *Carey v. Musladin*, 549 U.S. 70, 77 ( 2006). Petitioner's first claim is therefore without merit.

B. Failure to Allow Alibi Witness to Testify

Petitioner's second claim asserts that his Sixth Amendment right to present a defense was violated when the trial court ruled that he could not present an alibi witness because he failed to file a timely notice of alibi.

Petitioner notes that after the last prosecution witnesses testified, defense counsel indicated that she had just been informed that an alibi witness was present and willing to testify. The prosecutor objected to the introduction of alibi evidence; she said defense counsel failed to file a notice of alibi as required under state law. Dkt. 5-11, at 7-8. The trial court ruled that the alibi witness was prohibited from testifying because "this is the middle of a trial, and no notice was given, that means the prosecution didn't have the opportunity in that case to deal with those kind of things that might be important. They certainly would be at a disadvantage. . . ." Id., at 4.

Defense counsel was permitted to make an offer of proof as to the alibi witness's proposed testimony. Jennifer Hawkins testified that she was with Petitioner on September 30, 2012, from about 8:00 in the evening until about 7:00 the next morning. Dkt. 5-11, at 12-19. She indicated that during that night, she woke sometime around 2:00-3:00 a.m. and observed Petitioner upstairs asleep with her children. Id., at 20-21.

Petitioner asserts that given the importance of the witness to the defense, the failure to file a notice of alibi was an insufficient basis for excluding the alibi testimony. Petitioner asserts that a short continuance allowing the prosecutor to interview the witness would have prevented unfair surprise and secured Petitioner's constitutional right to present a defense.

After reciting the law regarding the notice requirements for presenting an alibi defense, the Michigan Court of Appeals found that the trial court did not abuse its discretion in denying the motion to present the testimony:

> Defendant filed a notice of his intent to raise an alibi defense on the fourth

day of trial. The alibi witness was permitted to testify outside of the presence of the jury prior to the trial court's ruling on defendant's motion. The trial court then denied the motion based on the fact that it was untimely and because the factors listed in *Travis* did not favor the trial court exercising its discretion to allow such testimony. The trial court stated that the veracity of the alibi witness was questionable given the length of time since defendant was arrested, no reason was given for the delay, and the prosecution had already rested its case and was unable to present a case that contemplated the alibi defense. The trial court noted that, had the prosecution been aware of defendant's alibi defense, its plea offer with Wells could have required Wells to testify in defendant's case.

We hold that the trial court did not abuse its discretion in refusing to allow defendant to present the testimony of an alibi witness. See *Travis*, 443 Mich. at 679–680. First, at the time defendant raised the issue of the alibi defense, the prosecution had already rested its case. See *id*. at 682. Although the prosecution was allowed to interview the witness, it had no time to prepare for the defense. As the trial court noted, the prosecution may also have been prejudiced in its ability to rebut the alibi defense, given that Wells had already pleaded guilty without any requirement that he testify against defendant. Second, there was no reason offered for the delay. See *id*. The witness testified that she did not come forward because she was busy working, but there was no reason provided for defendant's failure to mention his alibi defense. Third, there were no mitigating factors. See *id*. Fourth, there was strong evidence, specifically eyewitness testimony, against defendant in both cases. See *id*. Finally, the alibi witness's testimony lacked credibility; although she testified that defendant only left her home once that evening, at approximately 1:00 a.m., there was no indication that she was with him the entire time. Also, according to her testimony, her two adult sons were also present that evening and did not come forward as alibi witnesses. Thus, the trial court's decision to exclude the testimony was not outside the range of reasonable and principled outcomes. See *Duenaz*, 306 Mich. App. at 90.

*Clark*, 2015 WL 248659, at*5-6.

In *Peterson v. Smith*, the Sixth Circuit outlined the requirements of clearly established Supreme Court law when a trial court excludes defense evidence for failure to comply with notice requirements:

The Sixth Amendment's Compulsory Process Clause, applicable to state criminal proceedings through the Due Process Clause of the Fourteenth Amendment, see *Washington v. Texas*, 388 U.S. 14, 17-19 (1967), provides that "the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. In *Taylor v. Illinois*, 484 U.S. 400, 416 (1988), the Supreme Court upheld an order excluding the testimony of a defense witness as a sanction for

> counsel's noncompliance with a discovery rule that required notice of intention to call the witness and for misleading the court concerning counsel's knowledge of the witness's whereabouts. Although confirming that "few rights are more fundamental than that of an accused to present witnesses in his own defense," *id*. at 408, courts must balance that right against the state's interest in an orderly trial. "The trial process would be a shambles if either party had an absolute right to control the time and content of his witnesses' testimony." *Id*. at 411. "Given the ease with which an alibi can be fabricated, the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate." *Id*. at 412 n.17.
>
> The Court in *Taylor* declined to issue comprehensive guidelines for this balancing process, but stated that a trial court should consider "the fundamental character of the defendant's right to offer the testimony of witnesses in his favor," "the integrity of the adversary process," "the interest in the fair and efficient administration of justice," and "the potential prejudice to the truth-determining function of the trial process." *Id*. at 414-15. Moreover, the Court concluded that exclusion is "entirely consistent with the purposes of the Compulsory Process Clause" where counsel's delay in providing timely notice of the exculpatory evidence was "willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination." *Id*. at 415. When performing this balancing test, however, a court should be mindful that alternative sanctions to exclusion are adequate and appropriate in most cases. See *id*. at 413-14.

2001 U.S. App. LEXIS 18580, *14-16 (6th Cir. 2001).

The Michigan Court of Appeals did not unreasonably apply this clearly established constitutional framework in rejecting Petitioner's second claim. The Court notes that at trial, Petitioner did not assert that his constitutional right to present a defense was implicated by his request to call the alibi witness. And even in the Michigan Court of Appeals Petitioner only made passing reference to his constitutional right to present a defense. See Dkt. 5-13, Defendant-Appellant's Brief on Appeal, at 11. Petitioner's primary argument in the state appellate court was that the trial court abused its discretion under state law in failing to allow the alibi witness to testify. Id., at 11 ("A court's decision to exclude alibi evidence for noncompliance with Mich. Comp. Law 768.20 is reviewed for an abuse of discretion."). Accordingly, it is unsurprising that neither the trial court nor the state appellate court reviewed the claim explicitly as a constitutional right-to-present-a-

defense claim.

In any event, the deferential standard set forth in § 2254(d) presumptively applies even where the state court deciding a federal claim "issues an opinion that . . . does not expressly address the federal claim in question." *Johnson v. Williams*, 568 U.S. 289, 292 (2013). When this situation occurs, "the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." Id, at 293. Petitioner has not attempted to rebut the presumption that the state court implicitly rejected Petitioner's constitutional claim on the merits.

Turning to the constitutional framework, neither the state trial court nor the appellate court explicitly considered the fundamental character of the defendant's right to offer the testimony of witnesses in his favor, but again, Petitioner never asserted that his constitutional right to present a defense was at stake. The state court instead focused on the other interests identified in *Taylor*: "the integrity of the adversary process," "the interest in the fair and efficient administration of justice," and "the potential prejudice to the truth-determining function of the trial process." *Id*. at 414-15.

The state court found that these interests were implicated by Petitioner's delay in disclosing the witness to prosecution, giving it no time to prepare for the defense. Petitioner's assertion that a short continuance would have allayed that concern is specious. An eleventh-hour interview is no substitute for a full investigation by the prosecution into Petitioner's relationship with the witness, whether other people at the witness's house would corroborate or contradict her testimony, or whether other evidence could be uncovered regarding Petitioner's claim that he was with the witness when the crimes occurred.

While there was no finding by the state courts that the delay was motivated by a desire to obtain a tactical advantage, Petitioner offers no reason why the alibi witness did not come forward sooner. If it were true that Petitioner was with Hawkins at the time of the crimes, one would have

expected him to inform his counsel of that fact in advance of trial.

Lastly, the state court found that Hawkins' proposed testimony lacked credibility in that her two adult sons were allegedly present as well, but neither of them was offered as an alibi witness. This finding is relevant to a determination whether excluding the alibi witness would cause prejudice to the truth-determining function of the trial process.

In discussing Petitioner's claim, the Michigan Court of Appeals addressed most of the factors discussed in *Taylor*, and reasonably adjudicated Petitioner's claim. Petitioner fails to demonstrate entitlement to relief with respect to his second claim.

C. Failure to Excuse Michigan Department of Corrections Juror

Petitioner's third claim asserts that his Sixth Amendment right to a fair and impartial jury was denied when the trial court did not remove a juror formerly employed as an administrator at the Michigan Department of Corrections who allegedly increased Petitioner's security classification.

The record indicates that during jury selection, juror Robin Cole indicated that she was retired from the Michigan Department of Corrections, and she formerly worked at the Mound Correctional Facility where Petitioner was previously incarcerated. Cole indicated, however, that she never had contact with Petitioner. Dkt. 5-8, 97-100.

During trial, Petitioner indicated to his counsel that Cole was involved in a prison disciplinary proceeding which resulted in a higher security classification for him. Defense counsel moved to remove her from the jury. Dkt. 5-10, at 10-11. The trial court denied the motion. Id. The next day, the court asked the jury whether any of them knew or recognized anybody involved in the case "in any kind of way," and no juror gave an affirmative response. Dkt. 5-11, 25-26.

After setting-forth the law concerning challenging jurors for cause, the Michigan Court of Appeals found that Petitioner failed to demonstrate that Cole was biased or partial against him:

> [T]he trial court did not improperly deny defendant's challenge for cause, because defendant did not overcome the presumption that the juror was impartial. See *Miller*, 482 Mich. at 550. During voir dire, the juror at issue indicated that she was retired from the Department of Corrections. She also indicated that she would be fair and impartial. On the third day of trial, trial counsel advised the court that defendant had informed him that the juror, as part of her administrative duties in the Department of Corrections, had caused him to be moved from a certain facility to a higher quarantine facility. However, during voir dire the trial court had twice asked the jurors whether they recognized anyone, and the juror in question had not indicated that she knew defendant. "This Court defers to the trial court's superior ability to assess from a venireman's demeanor whether the person would be impartial." *Williams*, 241 Mich. App. at 522. There is also no support for defendant's contention that the trial court was required to separately question the juror, apart from the rest of the jury. Second, defendant did not exhaust all peremptory challenges. See *Lee*, 212 Mich. App. at 249. Accordingly, the trial court did not abuse its discretion, *Williams*, 241 Mich. App. at 521, nor was there plain error affecting defendant's substantial rights. See Henry, 305 Mich. App. at 152.

*Clark*, 2015 WL 248659, at *7.

Under 28 U.S.C. § 2254(e)(1), the determination of a factual issue by a state court is presumed to be correct. It is Petitioner's burden to rebut the presumption of correctness by "clear and convincing evidence." Petitioner presented nothing to the state courts, and he presents nothing here, to rebut the factual finding by the state court that the juror in question was not actually biased against him. "Bias in this context is 'actual bias,' or bias in fact," and a "petitioner must show that the jurors were actually biased against him." *Holder v. Palmer*, 588 F.3d 328, 339 (6th Cir. 2009). Petitioner's claim fails because he fails to overcome the presumption of correctness attaching to the state court's determination that the juror in question was not actually biased against him.

D. Closure of Courtroom After Jury Selection

Petitioner's fourth claim asserts that his Sixth Amendment right to a public trial was violated when the trial court closed the courtroom after the jury was selected. Petitioner relatedly asserts that

his trial attorney provided ineffective assistance of counsel by failing to object to the closure.

The Michigan Court of Appeals rejected this claim by finding that it was based on a misreading of the trial record, and that no closure of the courtroom occurred:

> [D]efendant's claim that the trial court closed the voir dire proceedings to the public is not supported by the record. The record instead reflects that after the jury was selected and excused for lunch, and while the parties were discussing other matters, the following exchange occurred:
>
> DEPUTY: Step out.
>
> THE COURT: Get out, get out.
>
> Get out of the courtroom now.
>
> Who—you know who you are, who just made that comment.
>
> Come on, do you want to leave, or us have you leave?
>
> DEPUTY: I'm gonna have everybody if you don't step out.
>
> Everybody go. Go.
>
> Everybody go.
>
> Everybody out.
>
> THE COURT: Cannot even respect the courtroom. This is not a game we're playing here.
>
> Get some more deputies on the floor here, please.
>
> It is unclear what precipitated any courtroom clearing. And, there is no evidence that the courtroom was closed during voir dire. Additionally, the trial court made subsequent statements that indicated that the courtroom had not been closed to the public. Shortly after the above exchange, the court recessed for lunch. The record indicates that after the recess, and after the jurors were brought back into the

14

courtroom, the trial court made additional comments to individuals in the courtroom:

> I'm gonna give you one warning:
>
> If anybody says anything to a victim, or a victim's family, in any kind of way, if you even look at them the wrong way and I know about it, I'm gonna hold you in contempt of Court, and deal with you accordingly.
>
> You are to be proper in the courtroom, and respect to where you are in this courtroom.
>
> If you want to get stupid, I'm gonna get stupid with you.
>
> So, you're forewarned.

Thus, even assuming that a closure occurred, it was brief and was not during voir dire (as defendant contends). Additionally, "a court necessarily has the inherent power to preserve or restore order by temporarily ejecting from the courtroom disruptive and disorderly persons. . . ." *In re Hague*, 412 Mich. 532, 561 (1982). Therefore, we hold that defendant did not establish plain error affecting his substantial rights. See *Vaughn*, 491 Mich. at 664.

Further, "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v. Ericksen*, 288 Mich. App. 192, 201 (2010). Given that the record indicates that the courtroom was not closed to the public during voir dire, trial counsel was not ineffective for failing to make a meritless argument. Thus, defendant's claim of ineffective assistance of counsel also fails.

*Clark*, 2015 WL 248659, at *8-9.

The resolution of this claim hinges on a factual determination made by the state court.

Contrary to Petitioner's claim, the Michigan Court of Appeals found that the courtroom was never closed to members of the public. Despite the courtroom deputy's use of the word "everybody," the state court found that only disruptive members of the public were ejected from the courtroom. This interpretation of the record is corroborated by the fact that later in the record the trial court was again forced to address unruly members of the public in the courtroom, indicating that others remained in the courtroom. See Dkt. 5-8, at 141.

Additionally, Petitioner did not present to the state courts, or this Court, an affidavit or other offer of proof indicating that the courtroom was truly cleared following jury selection. Accordingly, Petitioner's fourth claim fails because the factual predicate underlying it was found to be false by the Michigan Court of Appeals, and Petitioner fails to offer clear and convincing evidence that the factual determination made by the state court was incorrect. § 2254(e)(1).

E. Sufficiency of the Evidence of Aiding and Abetting

Petitioner's final claim asserts that his rights under the Due Process Clause were violated when he was convicted based on insufficient evidence to prove guilt beyond a reasonable doubt. Petitioner only challenges the sufficiency of the evidence with respect to the Ringo carjacking. He asserts that while his co-defendant was identified as being the person who committed the crime, the testimony indicated nothing more than Petitioner's mere presence at the scene.

After reciting the controlling constitutional standard for adjudicating a sufficiency of the evidence claim and stating the elements of the offenses and the law regarding aiding and abetting, the Michigan Court of Appeals found that sufficient evidence was presented to demonstrate beyond a reasonable doubt that Petitioner was guilty of the Ringo crime:

> There was sufficient evidence to support defendant's carjacking conviction as aider and abettor. Defendant does not dispute that a carjacking occurred. Viewing the evidence in the light most favorable to the prosecution, there was evidence that

16

defendant performed acts that assisted in the commission of the carjacking. See *Kosik*, 303 Mich. App. at 150; Bennett, 290 Mich. App. at 472. The evidence established that defendant and Wells arrived at the party store together and entered the store several times before the carjacking. They then drove across the street before returning and parking next to the victim's car. Just before Wells perpetrated the theft of the victim's vehicle, defendant got into the driver's seat of the vehicle in which he and Wells had arrived. A rational trier of fact could infer that defendant assisted in scoping out the location and choosing the victim, and was acting as a lookout while Wells perpetrated the offense. Further, defendant provided assistance by driving away the vehicle in which he and Wells had arrived. Defendant's assistance aided and encouraged the commission of the carjacking. See *Moore*, 470 Mich. at 71. Given defendant's actions, he was not merely present at the scene. See *Norris*, 236 Mich. App. at 419-420.

The circumstantial evidence further supports the finding that defendant intended the commission of the crime or knew that Wells intended its commission at the time defendant gave assistance. See *Bennett*, 290 Mich. App at 474. Defendant's intent can be inferred from his close association with Wells before the crime, including going in and out of the store, his acts in the other docket, and his participation in driving away the vehicle in which they had arrived. Defendant's driving away, or flight after the incident, is further evidence of his intent. See *Turner*, 213 Mich. App. at 569. Accordingly, there was sufficient evidence to support defendant's carjacking conviction as an aider and abettor.

Defendant also asserts that there was insufficient evidence to support his armed robbery conviction and CCW conviction as an aider and abettor, but fails to elaborate on his arguments regarding those offenses. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Henry*, 305 Mich. App. at 142 (citation and quotation marks omitted). Nonetheless, there was sufficient evidence to support these convictions.

\* \* \*

In this case, there was evidence that Wells used a gun during the carjacking and, thus, that the weapon was present in the vehicle occupied by defendant, which they arrived in together before the carjacking. See *Nimeth*, 236 Mich. App. at 622. Defendant's knowledge that there was a weapon in the vehicle he was occupying can also be inferred from these circumstances. A rational trier of fact could also conclude that defendant was carrying the weapon given that he was sitting in the front passenger's seat next to Wells when they arrived, and thus likely had access to the weapon, and the fact that defendant drove the vehicle away after the carjacking. See id. Finally, a rational trier of fact could in any event conclude that the gun "was being carried for the purposes of unlawful enterprise" in which all parties were engaged, and that defendant had knowledge that the gun was being carried by Wells, a co-perpetrator. *Pearce*, 20 Mich. App. at 292. Thus, there was sufficient evidence

to convict defendant of carrying a concealed weapon.

*Clark*, 2015 WL 248659, at *10-12.

This decision did not unreasonable apply clearly established Supreme Court law. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). The critical inquiry on a sufficiency-of-the-evidence review is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id*. at 334. "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 318-19.

The Court may not vacate a state court decision rejecting a sufficiency of the evidence claim merely because it disagrees with the decision. Instead, it may grant habeas relief only if the state court decision was an objectively unreasonable application of *Jackson*. *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). For the Court, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).

Under Michigan law, the elements of aiding and abetting are:

(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement.

*People v. Moore*, 470 Mich. 56, 67-68 (2004) (quoting *People v. Carines*, 460 Mich. 750, 768

18

(1999)).

When viewed in the light most favorable to the prosecution, sufficient evidence supported Petitioner's conviction of the Ringo offenses as an aider or abettor. Viewed most favorably to the prosecution the evidence indicated that Petitioner was present with co-defendant Wells for a substantial period of time before the Ringo carjacking. The evidence allowed for a rational fact-finder to conclude that Petitioner went with Wells to surveil the location of the crime. When Wells drove up behind the Ringo car, Petitioner then drove the vehicle they arrived in away from the scene as Wells drove the victim's car away. The action of driving the getaway car away was an act that assisted the commission of the crime. The jury was not required to check it common sense at the door: the fact that Petitioner was with Wells both before, during, and after both carjackings allowed jurors to infer beyond a reasonable doubt that Petitioner knew of Wells' intent to commit the crimes and aided him in doing so. The Michigan Court of Appeals' finding that there was sufficient evidence to sustain Petitioner's conviction "was [not] so insupportable as to fall below the threshold of bare rationality." *Coleman*, 566 U.S. at 656. Habeas relief is not warranted.

### IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability issued. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different

manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted). Here, jurists of reason could debate the Court's conclusion that Petitioner is not entitled to habeas relief with respect to his claim that his right to present a defense was violated by the exclusion of his alibi witness. Therefore, the Court will grant Clark a certificate of appealability with respect to that claim. However, the resolution of Petitioner's other claims is not reasonably debatable; a certificate is denied with respect to them.

## V. Conclusion

The Court:

1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus,

2) **GRANTS** a certificate of appealability with respect to Petitioner's second claim, and

3) **DENIES** a certificate of appealability with respect to Petitioner's other claims.

**SO ORDERED.**

S/ Victoria A. Roberts
Honorable Victoria A. Roberts
United States District Judge

Dated: 4/24/18